AO 91 (Rev. 11/11) Criminal Complaint



## UNITED STATES DISTRICT COURT

for the

Central District of Illinois

JUN 27 2024

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| | ) | 24-MJ- 7131 |
| Marcus McKinney | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ June 26, 2024 _____ in the counties of Sangamon and Vermilion in the

____ Central ____ District of ____ Illinois ____ , the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 21 U.S.C. §841(a)(1) and (b)(1)(A) | Possession of Fifty Grams or More of Methamphetamine (Actual) with Intent to Distribute |

This criminal complaint is based on these facts:

See DEA Task Force Officer Daniel Weiss's affidavit, which is attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

## Redacted

*Complainant's signature*

DEA TFO Daniel Weiss
*Printed name and title*

Attested to by reliable electronic means being telephone and electronic mail, in accordance with Fed. R. Crim. P. 4.1..

s/Eric I. Long

Date: 6/27/2024

*Judge's signature*

City and state: Urbana, Illinois

Eric I. Long, United States Magistrate Judge
*Printed name and title*

<u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT</u>

I, Daniel Weiss, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I, Detective Daniel Weiss am employed with the City of Springfield,

Illinois, Police Department and have been so employed for more than nineteen years. I

am currently assigned as a Task Force Officer (TFO) with the Drug Enforcement

Administration (DEA) Springfield Resident Office (SRO) investigating violations under

Titles 18 and 21 of the United States Code and have been so employed since August

2023.  I have had extensive training on the investigation and enforcement of state and

federal crimes. I have been employed with the Springfield Police Department (SPD) as a

Sworn Officer since November 2004. While employed with the SPD I was assigned to

the Pro-Active Crime Unit, specifically investigating Narcotics Crimes from January

2017 to April 2019.  I have specialized training in various aspects of narcotics

investigations which include, but is not limited to, interviewing defendants,

surveillance techniques, money laundering and clandestine laboratories.  I have

personally conducted or assisted in numerous investigations of state and federal

criminal violations involving the illegal trafficking of narcotics and related crimes. I

have helped prepare numerous criminal affidavits, executed search warrants, and

testified at criminal trials during my participation in investigations.  As a DEA TFO, I

am authorized to investigate violations of the United States Code and to execute

warrants issued under the authority of the United States.

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agents. This affidavit is intended to show only that there is probable cause of the requested warrant and complaint and does not set forth all of my knowledge about this matter.

3.      This affidavit is submitted in support of a complaint charging **MARCUS A. MCKINNEY** (date of birth: December 09, 1975)  with possession of 50 grams or more of methamphetamine (actual) with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A).

**PROBABLE CAUSE**

4.      The following is a summary of a narcotics investigation conducted in Springfield, Sangamon County, Illinois, by the Springfield Police Narcotics/Pro-Active Crime Unit (PAC). During the course of this investigation, **Marcus A. MCKINNEY** was identified as a narcotics trafficker in Springfield and Danville, Illinois, and surrounding areas.  It was learned that MCKINNEY was in the custody of the Federal Bureau of Prisons and was currently in a Residential Re-entry Program at the Family Guidance Center, located at 120 N. 11th St. Springfield, IL.  MCKINNEY is completing service of a 96-month imprisonment sentence from Central District of Illinois case no. 18cr20046. MCKINNEY was allowed unknown amounts of movement while assigned to this re-entry facility.  Law enforcement identified a residence and three storage units that MCKINNEY was utilizing to conceal and distribute narcotics during this investigation.

5.       On November 20th, 2023, at approximately 1:00 PM, Detective Weiss, Task Force Officer (TFO) Robinson, and TFO Wright met with an individual who was previously a Drug Enforcement Administration (DEA) Confidential Source at a prearranged location (PAL) in Springfield, Illinois (IL), for an initial debrief. The following information was obtained.

6.       The source of information (SI) identified Marcus MCKINNEY, aka "Slim," as a multi kilogram cocaine dealer in the Springfield, Illinois, area. The CS advised MCKINNEY sells kilograms of cocaine for approximately $20,000.00 per pound. The SI advised that MCKINNEY is currently on federal probation and that MCKINNEY was staying in the Danville, Illinois area before being placed in a halfway house in Springfield, IL.  Investigators are aware of MCKINNEY's involvement in drug distribution in and around Danville, Illinois, from early 2024 to the present (see Paragraph 49, below).

7.       The SI advised that MCKINNEY is having his source of cocaine meet MCKINNEY in the area surrounding the Family Guidance Center (120 N. 11th Street Springfield, Illinois).  The SI provided that MCKINNEY is currently employed at County Market (1501 S. Dirksen Parkway, Springfield, Illinois 62703).

8.       On June 6th, 2024, at approximately 12:45 PM, Detective Weiss conducted a spot check on 2352 S. 6th St. Springfield, IL, known to be a residence of MCKINNEY. Detective Weiss observed a 2004 BMW Illinois registration ER28071 parked at the residence. The registration on the BMW came back as registered to MCKINNEY.

Detective Weiss, along with Springfield Police Pro-Active Crime Unit Officers, set up surveillance on this residence.

9.      At approximately 1:30 PM, Detective Weiss observed the BMW vehicle that was registered to MCKINNEY back out of the driveway at 2352 S. 6th St. and travel north on 6th St. The vehicle then traveled east on South Grand Ave. before pulling into Fas Mart, 2900 E. South Grand Ave. Springfield, IL. Officer Gray was advised that if probable cause was obtained a traffic stop would be conducted on this vehicle.  Sgt. Wangard paced the BMW travelling eastbound on I72.  The vehicle was paced at approximately 80 MPH on a 70 MPH zone.

10.     A short time later Springfield Police Officer Gray conducted a traffic stop on the BMW on Interstate 72. The driver on that BMW was identified by law enforcement; MCKINNEY was not operating the vehicle or inside of it at this traffic stop. Officer Gray was given consent to search the vehicle by the driver. Officer Gray located a black backpack inside of the vehicle that contained approximately 456 grams of suspected "Ice" crystal methamphetamine (field tested positive as methamphetamine by ISP Master Sgt. Weishaar). The BMW was towed by law enforcement.

11.     It should be noted the driver of the BMW cooperated with investigators and was subsequently signed up as a confidential source with the Springfield Police Department (CS24-18) and the Central Illinois Enforcement Group #24-41274401950 after this traffic stop.

12.     Detective Weiss and Central Illinois Enforcement Group (CIEG) Inspector Zock interviewed CS24-18 (hereinafter "CS") at the Springfield Police Department. The

CS stated that he/she had just left a yellow residence on 6th street in Springfield.  The CS said that Marcus MCKINNEY lives at this residence and that MCKINNEY had loaned the CS MCKINNEY's vehicle. The CS positively identified MCKINNEY using a social media picture of MCKINNEY that Detective Weiss located on MCKINNEY's Facebook page. (https://www.facebook.com/profile.php?id=100080791846943).

13.     The CS stated that he/she had purchased the methamphetamine (approximately one pound) that had been located in his vehicle during the traffic stop, from MCKINNEY and has purchased methamphetamine from him multiple times in the past. The CS advised that he/she sold MCKINNEY multiple firearms in approximately September or October 2023.  The CS does not know if MCKINNEY is still in possession of those firearms.

14.     On June 12, 2024, at approximately 12:51 PM, Detective Weiss was contacted by the CS. The CS advised that he/she was contacted by MCKINNEY via a video call on Facebook Messenger that day. The CS was directed by MCKINNEY to come by MCKINNEY's residence, 2352 S. 6th Street, Springfield, IL, to retrieve the CS' property that had been left in MCKINNEY'S BMW when it was towed following the traffic stop where the CS was arrested. The CS went to MCKINNEY's residence and spoke with MCKINNEY while retrieving the CS' property.

15.     While the CS was at the residence, MCKINNEY told the CS that he was going to give the CS one pound of methamphetamine that MCKINNEY had found in the basement to get the CS back on his feet after the seizure of the one pound of methamphetamine by law enforcement on June 6, 2024. MCKINNEY told the CS that

the CS did not owe any money for the pound of methamphetamine that was seized by

law enforcement at the time of CS's arrest on June 6th, 2024.  MCKINNEY told the CS

that the CS did, however, owe him for all the tow fees MCKINNEY paid to get the

BMW out of impound. The CS advised that he/she believed MCKINNEY was "testing"

him/her to confirm whether the CS had agreed to work with law enforcement or not.

The CS took the one pound of methamphetamine ice from MCKINNEY on June 12,

2024. The CS stated that they felt that they had to take the methamphetamine or

MCKINNEY would become suspicious. Upon meeting with investigators, the CS

provided approximately one pound of methamphetamine ice to law enforcement.

16.    The CS advised that, while at MCKINNEY's residence, the CS observed

three young white girls inside. While in the residence, a Chevrolet Equinox arrived and

picked up one of the girls, who was called "CICI".

17.    The CS advised MCKINNEY was still driving the white and black

Escalades that were located in the driveway of MCKINNEY'S residence. These

Escalades are both registered to MCKINNEY. The CS also told investigators that

MCKINNEY advised the CS that they could use the BMW or a Chevrolet Traverse

(vehicle information listed below).

18.    The suspected methamphetamine that the CS turned over to Detective

Weiss and Detective Redpath on June 12, 2024, and that had been obtained from

MCKINNEY at his residence that day weighed approximately 452.08 grams. The

suspected methamphetamine field tested positive using the TruNarc.  Detective Weiss

6

packaged the drug evidence according to DEA protocol and sent it to the DEA lab with

a request to test the suspected ice methamphetamine for weight and purity.

19.    On June 14, 2024, another interview was conducted with the CS.  Inspector

Zock, Capranica, and Detective Weiss were present.  The CS stated that he/she knows

that MCKINNEY has three storage units in Springfield, IL.  The CS stated that

MCKINNEY asked him/her to open the units in the CS's name.  The CS was able to

describe MCKINNEY's storage unit locations and detectives and inspectors were able to

identify them as:

      a.   Mansa Mini Storage, 2171 S. 9th St., Springfield, IL

      b.   U-Haul Moving and Storage, 3250 Clearlake Ave. Springfield, IL

      c.   B & J Mini Storage, 2800 S. 6th St., Springfield, IL.

20.    The CS advised that all three of the storage units were in the CS's name.

MCKINNEY had asked the CS to open the units in the CS's name rather than in

MCKINNEY's.  The CS stated MCKINNEY paid the CS to open up the storage units in

their name.

21.    Mansa Mini Storage was the most recent unit rented in the CS's name.

The CS stated that MCKINNEY used the CS's State of Illinois I.D. to open the unit.  The

registration was done online by MCKINNEY while the CS was in the car.  Mansa Mini

Storage was contacted by law enforcement, and a tenant list was provided.  The CS has

storage Unit 20 listed in their name at the facility. The following phone number and

email had been provided to Mansa during the registration for that rental: (217) 801-

4576, geezybaby217@gmail.com. Using an open-source information gathering program,

it was learned that this phone number is in the name of Brandi Rutherford. Rutherford and MCKINNEY are "friends" on Facebook. The email address that was provided to Mansa Storage as a contact email for the unit belongs to MCKINNEY per an open source information gathering program.

22.    Based on my training and experience it is common for narcotics traffickers to "store" narcotics away from their residence. They often use storage units in other people's names/contact information to distance themselves from it. It is believed that if the units are not in the traffickers names then it will be harder for law enforcement to locate the units and prove that the possible contraband inside belongs to the trafficker. It should be noted MCKINNEY was observed entering this unit on June 20, 2024, (as detailed further below) during a controlled methamphetamine buy.

23.    The CS stated MCKINNEY also asked the CS to rent a storage unit at U-Haul on Clearlake on October 14, 2023. The CS provided investigators with Facebook Messenger messages from MCKINNEY's Facebook account asking the CS to open the storage unit. MCKINNEY directed the CS to put MCKINNEY'S "son's" name Caylob Compton and also Marcia Hyche on the unit as people who can access it. MCKINNEY told the CS his phone number was (217) 977-1906 in the messages. MCKINNEY told the CS to see if U-Haul had any of the "5.5 storages, open the small ones". The CS advised MCKINNEY went to U-Haul and went inside when the CS had first rented the unit.

24.    Inspector Zock contacted a U-Haul employee and confirmed that Unit # 1544 at U-Haul Moving and Storage at 3250 Clearlake Ave. Springfield, IL facility was in the CS's name. Both Caylob Compton, (217) 331-2450, 111 Kentucky Ave., Danville,

IL, and Marcia Hyche, (217) 497-53416, 220 N. State, Westville, IL, were listed as alternate contacts on Unit # 1544.

25.     The CS stated MCKINNEY also asked the CS to rent a storage unit at B & J Mini Storage. MCKINNEY asked the CS to open this unit up after the unit at U-Haul. Detective Redpath contacted B & J Mini Storage, and they provided a tenant list. The CS has Unit #165 at this facility rented in their name. The unit was opened up on March 5, 2024. The CS stated MCKINNEY went with him/her to rent this unit, but stayed outside when the CS went inside to rent this unit.

26.     Based on my training and experience and the information the CS provided, including the Facebook messages directing/asking the CS to open a storage unit, it is believed that MCKINNEY is attempting to distance himself from these storage units by having other persons rent them. This is common practice for narcotic traffickers. Traffickers frequently store contraband including narcotics and firearms away from the locations they have listed in their names. Since MCKINNEY is still in custody of the Federal Bureau of Prisons, keeping the storage units out of his name would potentially keep the Bureau of Prisons from searching them as part of his supervised release program. This could also be another reason why MCKINNEY is wanting multiple storage units. At this time, it is unknown if the Bureau of Prison's knows MCKINNEY has a residence off site from the reentry program's dormitory.

27.     A State of Illinois overhear order was sought and signed by Sangamon County Judge Grischow on June 18, 2024.

9

28.     On June 20, 2024, a controlled methamphetamine purchase was conducted

from MCKINNEY using the CS, Springfield Police Department CS24-18. The CS

purchased approximately one pound of methamphetamine from MCKINNEY for

$2,000 of Official Advanced Funds. The details of the controlled purchase follows:

> 10:00am – CIEG Inspector Rexroad sees a white Cadillac Escalade (IL registration ER58679 in the name of Marcus MCKINNEY) parked on Adams Street, near 12th Street, in Springfield, Illinois

> 10:10am – Sgt. Wangard sees a black Cadillac Escalade (IL registration EJ65251 in the name of Marcus MCKINNEY) parked at 2352 S. 6th Street

> 10:19am – CS arrives at previously arranged location (PAL) to meet with investigators to obtain OAF moneys and the recording equipment

> 10:20am – TFO Redpath searches CS's vehicle; no contraband found

> 10:26am – Inspector Zock searches CS; no contraband found

> 11:13am – CS sends text message to MCKINNEY that reads "OTW" meaning CS is on the way to MCKINNEY's residence at 2352 S. 6th Street

> 11:35am – Covert audio/ video/ location recording devices on the CS's person and the CS' vehicle activated by law enforcement

> 11:39am – CS leaves PAL

> 11:52am – CS arrives at 2352 S. 6th Street

> 12:16pm – CS exits the CS's vehicle and approaches front porch to MCKINNEY's residence

> 12:17pm – CS speaks with unidentified black male sitting on front porch of MCKINNEY's residence

> 12:56pm – Inspector Mayes sees MCKINNEY's white Cadillac Escalade near 9th Street and Wellesley in Springfield

> 12:58pm – Sgt. Wangard sees MCKINNEY approach front porch of 2352 S. 6th Street wearing white shirt, black bag, and blue jeans

1:02pm – Sgt. Wangard sees MCKINNEY using his cell phone on front porch of 2352 S. 6th Street

1:04pm – Sgt. Wangard sees CS enter front door of 2352 S. 6th Street

1:07pm – Sgt. Wangard sees unidentified black male arrive on front porch and enter 2352 S. 6th Street (It should be noted the CS advised investigators that the CS and MCKINNEY had talked inside the residence before MCKINNEY stated he had to go retrieve the methamphetamine. MCKINNEY was observed on the covert video recording device walking east bound in the driveway and getting into his white Escalade and then leaving east bound in the alley towards Officer Manzanares)

1:38pm – Officer Manzanares sees MCKINNEY's white Cadillac Escalade northbound from alley between 6th Street and 7th Street, turn eastbound on Princeton, then turn north on 9th Street

1:39pm – Special Agent McKone sees the white Cadillac Escalade enter Mansa Mini Storage

1:41pm – Special Agent Rozell sees MCKINNEY, wearing white shirt and blue jeans carrying a black bag, enter Unit #20 within Mansa Mini Storage

1:42pm – Special Agent Rozell sees MCKINNEY exit Unit #20, close, then lock door

1:43pm – Special Agent McKone sees MCKINNEY's white Cadillac Escalade exit Mansa Mini Storage southbound on 9th Street then turn west on Princeton

1:44pm – Officer Manzanares sees the white Cadillac Escalade westbound on Princeton, then turn south in the alley between 6th and 7th Street

1:48pm – Sgt. Wangard sees MCKINNEY return to front porch from driveway and enter front door of 2352 S. 6th Street

1:51pm – Sgt. Wangard sees CS exit front door of 2352 S. 6th Street with MCKINNEY

1:53pm – CS opens rear passenger side door of MCKINNEY's white Cadillac Escalade and leans into vehicle

1:54pm – CS exits white Cadillac Escalade

1:55pm – CS enters CS vehicle

1:56pm – Sgt. Wangard sees white Cadillac south bound in alley between 6th and 7th Street crossing Wellesley

1:57pm – CS leaves 2352 S. 6th Street in CS vehicle

2:17pm – CS arrives at PAL

2:18pm – CS provides purchased methamphetamine to Inspector Zock and TFO Weiss. TFO Redpath searches CS vehicle; no contraband is found.

2:32pm – Inspector Zock searches CS; no contraband is found.

29.     It is important to note that during this incident, the covert recording device being utilizing by CS stopped recording audio while the CS was on the front porch of 2352 S. 6th Street, prior to entering the residence.  The CS turned the volume down on his/her phone ringer based on the CS receiving text messages. It is suspected that this act disabled the audio recording function of the covert device. The CS did not know this would mute the audio. The video recording from the same device functioned and recorded properly throughout this operation.

30.     TFO Weiss, TFO Redpath, and Inspector Zock then interviewed the CS upon their arrival at the PAL after the controlled purchase was complete. CS exited their vehicle, entered investigators' vehicle, and immediately provided Officers with a grey plastic Walmart bag that had a thin white string tied to it that was approximately a couple feet in length. Within this Walmart bag was an object wrapped in clear plastic, similar to Saran wrap, and covered in a petroleum product that I suspected to be motor oil or diesel fuel. This package had not been on CS's person or in their vehicle when Inspector Zock searched CS or when TFO Redpath searched CS's vehicle prior to CS's interaction with MCKINNEY.

12

31.    The following is CS's recollection of the incident. The CS arrived at 2352 S. 6th and waited in the CS vehicle for a short time. CS exited the CS vehicle and met with a subject they know as "Unc". CS has met this subject before at this residence, but does not know the person's real name. I am aware through my training and experience that "Unc" is often used as a shortened version of the word "uncle". In this context, people will often refer to others as "uncle/ unc" or "nephew" to show a level of mutual trust and respect, even if the two individuals are not actually related. This appears to be the relationship between "Unc" and MCKINNEY. "Unc" asked the CS if MCKINNEY is in the rear of the residence, which CS answered that he was not. "Unc" invited the CS to have a seat on the front porch with him and wait for MCKINNEY to arrive.

32.    CS called MCKINNEY on the phone, and MCKINNEY answered by saying something to the effect of, "you know I see you on the front porch" and then ended the call. This is an indication that MCKINNEY actively monitors the security cameras located on the front of his residence. CS then waited on the porch with "Unc" until MCKINNEY arrived.

33.    MCKINNEY arrived and the CS said he was acting "funny" before inviting the CS inside the residence. The CS was growing fearful that MCKINNEY suspected him/her is cooperating with law enforcement. While inside the kitchen of the residence, the CS saw an unknown black male meet with MCKINNEY. MCKINNEY went to the basement of the residence and returned with two small plastic bags containing a white substance. MCKINNEY provided one of the bags to the unknown male who then left. The CS noted the other bag was left on the stovetop near a scale.

The CS was unsure what the white substance was, but believed it to be some kind of drug. The CS provided MCKINNEY with the $2,000 OAF, which MCKINNEY put in his pocket.

34.    The CS overheard MCKINNEY speaking on the phone with a female. The CS gathered from that conversation that the female was at the Super 8 hotel in Room 152 and that MCKINNEY was planning to "pull up" on her. This is common slang meaning MCKINNEY was planning to deliver drugs to the female at her current location. The CS also overheard MCKINNEY graphically describing his request for fellatio from the female upon his arrival. After this phone call, MCKINNEY told the CS that he would need to put on his "jogging shoes" to fulfil CS's request for methamphetamine.

35.    The CS waited in the living room of the residence; the CS believed MCKINNEY left on foot to retrieve the methamphetamine from somewhere nearby. While waiting in the residence, the CS noticed an unknown female within the residence that the CS described as looking to be 14 years old. The CS believed the female to be older than 14, but said she looked very young. Upon MCKINNEY's return to the residence, MCKINNEY told the CS that the methamphetamine was under the driver's seat of the CS's vehicle.

36.    The CS then walked out of MCKINNEY'S residence and the CS returned to their vehicle. In the vehicle, the CS located a grey plastic Walmart bag containing what CS believed to be the pound of methamphetamine they had requested from MCKINNEY in the driver's floorboard, near the pedals. CS retrieved some of their

personal items from the rear passenger side door of MCKINNEY'S white Cadillac

Escalade before returning to their own vehicle and leaving the area.

37.     After the debrief with the CS was complete, Detective Weiss, Detective

Redpath, and Inspector Zock began to unravel the packaging on the suspected

methamphetamine. Within the petroleum covered plastic wrap, we uncovered several

more layers of packaging to include plastic vacuum sealed bags and more plastic wrap.

At the core of this package, we located what we believed to be ice methamphetamine.

DEA Special Agent Petersen used a TruNarc Handheld Narcotics Analyzer to field test

the suspected ice methamphetamine. The TruNarc showed a positive test, indicating the

substance was in fact methamphetamine. The suspected ice methamphetamine weighed

approximately 481.49 grams with packaging materials. Detective Weiss packaged the

evidence according to DEA protocol and sent it to the DEA lab with a request to test the

suspected ice methamphetamine for weight and purity.

38.     Using a City of Springfield, IL Customer Search Portal, it was learned that

MCKINNEY has utilities in his name at 2352 S. 6th St, Springfield. Move in date was

listed as November 21, 2023.  The phone number listed for the tenant was (217) 977-

1906.  The utilities are currently active in MCKINNEY'S name.

39.     MCKINNEY was observed by surveilling officers driving two Cadillac

Escalades during the course of the investigation.  The first was a black 2010 Escalade

Illinois license plate EJ65251.  This vehicle was registered to MCKINNEY at 110 S.

Crawford St., Danville, IL.

40.     The second Escalade in which MCKINNEY was observed by investigators was a 2017 Escalade Illinois License plate ER58679.  This vehicle was registered to MCKINNEY at 110 S. Crawford St., Danville, IL.

41.     MCKINNEY was observed multiple times driving both vehicles around Springfield and also driving them back and forth from his residential reentry center.  It should be noted MCKINNEY would routinely park the vehicles in the 100 Block of South 12th St. and/or in the 1100 block of East Adams St. while he was at the reentry center.

42.     MCKINNEY also has the following vehicles registered to him:

a.  2012 Chevrolet Traverse, Illinois License plate EQ13158

b.  2004 BMW 530I Illinois license plate ER28071 (It should be noted this is the vehicle the CS was driving when he/she was driving on June 6, 2024 when the vehicle was observed leaving MCKINNEY's residence 2352 S. 6th St., Springfield, IL.)

43.     State Search warrants were sought for three storage units and the residence MCKINNEY from which sold one pound of methamphetamine to the Springfield Police Department Confidential Source to on June 20th, 2024. The below listed warrants were granted by The Honorable Sangamon County, IL Judge Cadigan on June 24th, 2024:

a.  2171 S. 9th St #20 Springfield, IL storage unit: Warrant served on 06/26/2024. Approximately 481.49 grams of suspected methamphetamine (field tested positive for methamphetamine) was located inside of this

unit. It should be noted MCKINNEY had the key to this unit located on his person when he was later taken into custody. He was also observed entering and exiting this unit during the controlled methamphetamine purchase on 06/20/2024.

   b. 2800 S. 6th St. #165 Springfield, IL storage unit: Warrant served on 06/26/2024. Approximately 6,014.63 grams of suspected cocaine (field tested positive for cocaine) was located inside of this unit. It should be noted MCKINNEY had the key to this unit located in his 2017 Cadillac Escalade when he was later taken into custody. He was also observed entering and exiting this unit on surveillance video on 06/22/2024.

   c. 3250 East Clearlake Ave. #1544, Springfield, IL: No contraband located in this storage unit.

   d. Residence located at 2352 South Sixth St. Springfield, IL: Approximately 4 grams of crack cocaine (field tested positive for cocaine) was located at the residence.

44.    MCKINNEY is currently in the custody of the Federal Bureau of Prisons, in custody at the RRM Chicago. The RRM Chicago is a Residential Reentry Management Program field office. Specifically, McKinney is assigned to the Family Guidance Center located at 120 N. 11th St., Springfield, IL. McKinney's hours of movement change frequently. It is unknown how much time he has to be at this reentry center. Per the Bureau of Prison's website, McKinney is set to be released on September 30, 2024. (www.bop.gov/inmateloc/, *last accessed 6/24/24*).

45.     MCKINNEY has prior convictions for drug-related felonies, as well as multiple violent-related arrests. MCKINNEY is currently serving a sentence with the BOP for Central District of Illinois Court case no. 18cr20046 for distribution of 50 grams or more of methamphetamine.

46.     **CS24-004** is the confidential source who was assisting the Springfield Police Department for consideration on current pending criminal drug charges. Information provided by the CS has proven to be accurate.

47.     The CS has prior convictions for drug-related felonies, armed robbery, aggravated battery offenses, and theft-related felonies. The CS also has one prior conviction from more than 10 years ago for willful obstruction of law enforcement officers. Since 2015, the CS has had only one criminal conviction (driving on a revoked or suspended license). The CS has a Probation Violation Warrant out of Georgia that is not valid in the State of Illinois.

48.     Following execution of the above-described search warrants, MCKINNEY was detained by law enforcment. TFO Weiss and TFO Redpath then interviewed MCKINNEY at the Springfield Police Station. MCKINNEY was read his *Miranda* Rights and stated he understood each of them. MCKINNEY stated that he has bought an ounce of cocaine for $500 and sold it for $600 since he has been allowed movement from reentry program he is currently assigned to. He also stated that he can purchase a kilo of cocaine for $16,500.00. MCKINNEY then stated he wanted to be taken to jail. The interview was ended.

49.     During the course of this investigation, I have been advised by Danville Police Department Detective Jon Stonewall that MCKINNEY has been identified as a source of supply for narcotics, including methamphetamine ice, in Danville, Illinois, and is the target of an on-going investigation by the Vermilion County Metropolitan Enforcement Group (VMEG). Confidential sources and informants have identified to VMEG officers that MCKINNEY is involved in the distribution of methamphetamine and other narcotics to persons in and around Danville, Illinois, and has been so involved from early 2024 to the present.

50.     Based on my training and experience in narcotics investigations, I know that more than 400 grams of methamphetamine ice is consistent with a distribution amount of the substance and is more than a typical user would possess of the drug at one time. I am also aware that methamphetamine ice sold in and around the Central District of Illinois regularly consists of purity levels in excess of 85% and often in excess of 95%. The substance located inside of the storage unit and possessed by MCKINNEY appeared similar in appearance to methamphetamine ice previously seized in the Central District of Illinois that had high purity levels. Therefore, based on my training and experience, I believe that the amount of methamphetamine ice located inside of the storage unit contained well in excess of 50 grams of pure (actual) methamphetamine.

Based on my training and experience in narcotics investigations, I know that more than 6,000 grams of cocaine is consistent with a distribution amount of the substance and is more than a typical user would possess of the drug at one time.

## CONCLUSION

51.    Based on the facts described above, I submit there is probable cause to

believe that Marcus MCKINNEY possessed more than 50 grams of methamphetamine

(actual) with intent to distribute, in violation of Title 21, United States Code, Sections

841(a)(1) and (b)(1)(A).

Respectfully submitted,

Redacted

Task Force Office Daniel Weiss
Drug Enforcement Administration

Attested to by reliable electronic means in accordance with Fed. R. Crim. P. 4.1
on June ___27___, 2024.

s/Eric I. Long

Hon. ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE

20